### BLAKE et al. v. NEWWITTER.

(Common Pleas of New York City and County, General Term. December 2, 1895.)

APPEAL—REVIEW—WEIGHT OF EVIDENCE.
　　A finding of the trial judge on conflicting evidence will not be disturbed on appeal.

Appeal from special term.

Action by Lucy E. Blake and Francis A. Williams against Nathan J. Newwitter to foreclose a mechanic's lien. From an interlocutory judgment in favor of plaintiffs, defendant appeals. Affirmed.

Argued before DALY, C. J., and BOOKSTAVER and PRYOR, JJ.

Cantor & Van Schaick, for appellant.
Artemas B. Smith and Arthur L. Henthorn, for respondents.

BOOKSTAVER, J. The appellant's sole contention is that the judgment is unwarranted by the facts. The complaint alleges that the plaintiffs, pursuant to an agreement between them and the defendant, performed certain labor and furnished certain materials in putting in steam-heating apparatus, and making repairs to the heating tank and boiler; that by the terms of the agreement the defendant was to pay the fair and reasonable value of the work done, labor and materials furnished, which was $1,114.98; that the

defendant has paid on account thereof the sum of $413.78, and they demand judgment for the balance. The defendant answers that the materials and work were defective, in that the boiler furnished burst, which compelled him to put in a new boiler at an expense of $500, and that he was thereby further damaged in the sum of $1,000, both of which sums he counterclaims. By their reply, plaintiffs deny the defects, and allege that the boiler which they had furnished was sufficient, but, through the carelessness of the defendant or his servants, was improperly used, in that it was over-heated and at the same time not supplied with sufficient water. The reply also set up an accord and satisfaction. The defendant sought to prove upon the trial that the damage to the boiler resulted from the fact that the plaintiffs improperly placed in position and connected a certain automatic, self-acting water feeder to the boiler. He contended that the feeder was placed too low to fill the boiler at its proper level, thereby causing the boiler to burn out. The evidence shows that the work was performed at the request of the defendant, and that the bills rendered were received by him without objection. The question in the case is whether the work was properly performed.

In October, 1892, the plaintiffs furnished a set of grate bars for the defendant's boiler. In December they were called in to repair the boiler. They took out the old boiler and put in a new one. This work was completed, and a bill therefor rendered, January 1, 1893. On January 27, 1893, at the request of the janitor of the defendant's buildings, their superintendent called and examined the boiler. He found the tubes over the fire red, and badly twisted. On this same day they wrote the defendant:

"Agreeable to your request, and also to call of your janitor, we sent our superintendent to the Hamilton apartment house this morning, and we find that the water has been out of the boiler and the boiler burnt, through the carelessness of your janitor. When he called at our office this morning, he was under the influence of liquor, and when our superintendent and one of our best men saw him this afternoon, he was still under the influence of liquor. * * * Shall we go on and make good the damage, and charge to your account?"

They received the following letter in reply from the defendant:

"Please proceed to make the repairs in the boiler of the Hamilton, in answer to yours of this date."

On February 3d the plaintiffs wrote to the defendant:

"You are probably aware that the work done by our men on Saturday and Saturday night last was of such a nature as to allow the boiler in your apartment house * * * to be run on Sunday morning, and continued, in a partially repaired condition, until we could complete the repairs. The boiler is now running with about 12 of the lower tubes removed. These are the tubes that were so badly burned. We also find that two of the headers were cracked and required renewal. * * * It will be necessary, in order to put the boiler in condition, to go through with the same amount of work as we did with the old boiler," etc.

In a postscript they added:

"We presume you understand that we will allow you for such parts of the present burnt sections as may be suitable to be used again by us in other

work, and charge you the cost of replacing the burnt tubes with new ones, in addition to the labor of putting in the new sections in the building."

Defendant answered, February 6th:

"Yours, dated 3d inst., received. In reply, I desire the repairs to the boiler made as you know best, so as to avoid a similar occurrence. Please do the work as soon as possible."

Plaintiffs proceeded with the repairs and rendered a bill for this work July 27, 1893. In September of that year the defendant called at their place of business and gave them two notes, aggregating $600, in payment. The plaintiffs made an allowance of $13.78 and had received previously $400, so that the two notes were given in settlement of the balance due on that date. After September 28, 1893, the plaintiffs did further work on the boiler at the defendant's request, and rendered a further bill for $101.20. This work consisted in putting in new tubes and cementing the cracks in the headers. It appears that, in the following March, the boiler leaked again, and a new one was put in by other parties.

The defendant's case rests mainly upon the testimony of William Ryan, who was the engineer or janitor who had charge of the boiler in January, 1893, when it burst, and who was discharged for intoxication on the statement to that effect made by the plaintiffs. He testified that he had told the plaintiffs that the feeder was placed too low. This the plaintiffs deny. It appears that an automatic feeder is an apparatus which easily gets stopped up and out of order, and has to be carefully watched. Ellison, for the defendant, testified that he examined the boiler before it was taken out, and found two of the headers cracked. The tubes were all right. This was in March, 1894. Examined as an expert, he expressed the opinion that the cracks were nearly new; that they might have been caused by the feeder being placed too low. He put in a new boiler, using the same feeder as had been used in the old one. The plaintiffs' witnesses testified that the feeder was not placed too low, and that, even if it had been two inches too low, it would still have supplied sufficient water to the boiler. After the new boiler was put in, it was tested to 15 or 20 pounds, and found to work all right, and it was tested after the repairs were made. The feeder each time kept the boiler supplied with sufficient water. From a careful examination of the evidence we are convinced that the preponderance of evidence is with the plaintiffs, that the boiler was originally injured by reason of the neglect of the defendant's janitor, and that, if it had been properly attended to, it would not have burnt.

The justice at the trial had the witnesses before him, and was better able to judge of their credibility upon the disputed facts than we can be. His conclusion is abundantly supported by the evidence. No error seems to have been made in the admission or exclusion of evidence.

The judgment is therefore affirmed, with costs. All concur.